**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| Joseph B. Babb, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| | ) | |
| Thomas A. Griscom, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

COMES NOW Joseph B. Babb, Plaintiff in the above-styled matter, and hereby files its Complaint against Defendant Thomas A. Griscom, showing the Court as follows:

**THE PARTIES**

1.

Plaintiff Joseph B. Babb ("Plaintiff" or "Babb") is a citizen of the State of Florida, residing at 4051 Corrientes Court South, Jacksonville, Florida 32217. Mr. Babb is 50% equity member of G&B Properties, LLC.

2.

Defendant Thomas A. Griscom ("Defendant" or "Griscom") is a citizen of the State of Georgia, who upon information and belief can be served at his home address at 44 Pointe Terrace SE, Atlanta, Georgia 30339. Mr. Griscom is 50% equity member of G&B Properties, LLC.

**JURISDICTION AND VENUE**

3.

This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332. Complete diversity exists between Plaintiff on one hand, and Defendant on the other hand. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.[1]

4.

This Court has personal jurisdiction over the Defendant pursuant to Defendant's consent to personal jurisdiction when he executed the G&B Properties, LLC Operating Agreement, executed on October 6, 1997 ("Original Agreement").[2]

5.

Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in the United States District Court, Northern District of Georgia, Atlanta Division because the contract at issue was entered into in Fulton County, Georgia and Defendant consented pursuant to Section 45 of the Original Agreement.

6.

This Court has subject matter jurisdiction over this action.

---

[1] *See* Quick Book Analysis, attached hereto as "Exhibit A".

[2] *See* Original Agreement, attached hereto as "Exhibit B".

## FACTUAL BACKGROUND

7.

Plaintiff and Defendant entered into the Original Agreement effective August 30, 1997, by which each obtained a 50% membership interest in G&B Properties, LLC,[3] a Georgia Limited Liability Company ("G&B Properties" or the "Company"). Plaintiff and Defendant are bound by the terms of this contract.

8.

At that time, Plaintiff was a successful developer of commercial and residential real estate in Georgia. Plaintiff had successfully developed and built a hangar and office complex, and was well underway with the development of a multi-tenant building with anchor tenant secured, at Gwinnett County Airport ("GCA Building"[4]).

9.

G&B Properties was founded on the financial strength, real estate development experience, and credit rating of Plaintiff to purchase, sell, lease, improve, and acts as a general contractor for real estate.

[3] *See* Exhibit B; *See also* Articles of Incorporation, attached hereto as "Exhibit C".

[4] GCA Building was contributed to G&B Properties by Plaintiff.

10.

Pursuant to the Original Agreement of G&B Properties, Plaintiff and Defendant are equal equity members of the Company and entitled to equal distributions of profits enjoyed by the Company.

11.

On or about the time of the execution of the Original Agreement, Plaintiff and Defendant identified and purchased two parcels at Arbor Business Park, located 805 Marathon Parkway, Lawrenceville, Georgia 30046 ("805 Marathon") and 825 Marathon Parkway, Lawrenceville, Georgia 30046 ("825 Marathon"[5]), in Gwinnett County, Georgia.

12.

On or about the same time, construction began for a 57,000 square foot multi-tenant building at 805 Marathon. The buildout was completed approximately one year later, and the Company began leasing spaces.

13.

At the same time, Plaintiff was an airline captain for Northwest Airlines and received a temporary base transfer to Honolulu, Hawaii. Plaintiff continued to return to Georgia at least 10 days a month.

---

[5] 825 Marathon was sold shortly after the acquisition to retire part of the loan for the 805 Marathon parcel.

14.

Plaintiff and Defendant decided to appoint Defendant to act as the member manager of G&B Properties while Plaintiff's airline job relocated him to Honolulu, Hawaii. Defendant's appointment was never contemplated to be a full time job, or permanent.

15.

The Original Agreement does not provide for Defendant to receive a management fee compensation. It required under Section 26 for the member to enter into an employment contract, to be approved by all members.

16.

Such employment agreement was never presented to Plaintiff, and none were ever executed to date. Plaintiff never consented to Defendant taking whatever amount he desired as a management fee.

17.

Additionally, the Original Agreement does not permit Defendant to pay himself any fees or commissions for the sale and rent of real estate.

18.

After Plaintiff left for Hawaii, G&B Properties acquired a property on Five Forks Trickum Road ("Five Forks") with the intent to develop a residential subdivision.

19.

Plaintiff and Defendant both invested considerable planning and research into the pre-development of the Five Forks property.

20.

Prior to development on the Five Forks property, the location was the subject of an eminent domain lawsuit by Georgia Power.

21.

At the conclusion of the legal proceedings, Georgia Power paid G&B Properties approximately $600,000 for the Five Forks property.

22.

Defendant, without notifying Plaintiff and in violation of the Original Agreement, unilaterally decided to pay himself a 10% commission of approximately $60,000 from the proceeds from the lawsuit.

23.

Defendant was not only unauthorized to take this commission by the Original Agreement, but he also did not hold a real estate broker's license, and violated Georgia law.

24.

Upon learning of the illegal receipt of the commission in a financial distribution statement, Plaintiff demanded that the commission be returned to the Company.

25.

Defendant never returned the commission to the Company.

26.

Similarly, Defendant paid himself commissions on leasing spaces at 825 Marathon and GCA Building, in violation of the Original Agreement and Georgia law.

27.

Plaintiff periodically requested financial statements for the Company over the years, but Defendant refused to produce as required by the Original Agreement under Section 19 (h).

28.

Defendant has always paid himself a management fee, which has varied over the years. For example, in 2002 -2003 he paid himself $1,402 for 805 Marathon and, $550 for GCA Building. In 2004, Defendant unilaterally increased his compensation to $1,685.33 for 805 Marathon, and 650 for GCA Building. This continued escalating until Plaintiff demanded the Original Agreement be amended to cap Defendant's capability to arbitrarily increase his pay.

29.

In 2015, Plaintiff and Defendant decided to refinance 805 Marathon with American Equity Investment Life Insurance Company ("Lender").

30.

Due to the 2008 financial crisis, Plaintiff suffered financial losses which resulted in negative credit rating.[6] As part of the refinance, the Lender required that the Defendant have operation control of the Company.

31.

Pursuant to the Lender's request, Plaintiff and Defendant executed the Unanimous Written Consent Amendment Of The Members And Managers Of G&B Properties, LLC, executed on July 13, 2015 ("First Amended Agreement"[7]).

32.

The First Amended Agreement did not alter the equity division among the members, but granted Defendant a 51% voting right on operational matters. By its terms, the First Amended Agreement would terminate upon payment of the loan to the Lender.

[6] On or about this time, the Company loaned Plaintiff $100,000 (April 21, 2015) and $196,000 (August 26, 2016). Plaintiff signed Promissory Notes for the loans and does not dispute them, but was concerned about paying back the Company due to Defendant's fraudulent management of the Company.

[7] *See* First Amended Agreement, attached hereto as "Exhibit D".

33.

Shortly thereafter, Plaintiff and Defendant executed the Unanimous Written Consent Amendment To Operating Agreement of G&B Properties, LLC, executed July 14, 2015 ("Second Amended Agreement"[8]).

34.

The Second Amended Agreement limited the total compensation of the Defendant managing member to $3,000 per month, requiring any amount in excess of this amount to be approved by unanimous consent of all members.

35.

Additionally, the Second Amended Agreement required Defendant managing member to distribute annual financial statements to all members and provide online access for banking records, rent rolls and leases of the Company.

36.

Following the execution of the Second Amended Agreement, Defendant continued to exceed the $3,000 limit compensation to himself in breach of the Second Amended Agreement.

[8] *See* Second Amended Agreement, attached hereto as "Exhibit E".

37.

To date, Defendant continues to pay himself in excess of the $3,000 limit and refuses to comply with the contractual obligations under the Second Amended Agreement.

38.

Over the years, Plaintiff made numerous requests that Defendant provide him with the Company's financial statements and books, but to no avail.

39.

On or about December 2018, Plaintiff retained the undersigned counsel in an effort to obtain financial statement and access to the Company's books, as it is the Plaintiff's right under the Second Amended Agreement and Georgia law.

40.

On January 24, 2019 Plaintiff's counsel sent a correspondence[9] to Defendant demanding that Defendant cease and desist form any payments to himself in excess of what is permitted under the Second Amended Agreement, and provided access to the financial statements and Company's books.

[9] *See* Letter from Adi Allushi to Thomas A. Griscom, dated January 24, 2019, attached hereto as "Exhibit F".

41.

Defendant did not cease breaching the Second Amended Agreement and continues to date to compensated himself in excess of the $3,000 allowed under the Second Amended Agreement.

42.

A few months following the January 24, 2019 letter, Defendant granted limited access to the Company's books. Following a review, Plaintiff discovered numerous transactions evidencing fraudulent activities by Defendant, including unaccounted cash payments, unauthorized commissions and development fees, and personal expenses paid from Company funds ("Fraudulent Transactions").

43.

On September 11, 2019, Plaintiff 's counsel sent a second letter demanding detailed explanation and documentation to support the Fraudulent Transactions[10].

44.

To date, Defendant has refused to do so.

45.

To date, in relation to 805 Marathon, Defendant has illegally paid himself $364,472 in real estate commissions, $71,378 in development fees, personal health

[10] *See* Letter from Adi Allushi to Thomas A. Griscom, dated September 11, 2019, attached hereto as "Exhibit G".

care $8,962, personal phone bills $4,911, unsubstantiated personal expense $38,176, unsubstantiated checks to cash $34,649 – for a total of $462,548.

46.

To date, in relation to GCA Building, Defendant has illegally paid himself $48,528 in real estate commissions, personal phone bills $17,524, unsubstantiated personal expense $11,532, unsubstantiated checks to cash $53,936 – for a total of $131,520.

**COUNT I: BREACH OF CONTRACT**

47.

Paragraphs 1 through 46 of Plaintiff's Complaint for Damages are incorporated by reference as if fully set forth herein.

48.

Plaintiff and Defendant entered into a contractual agreement in the Second Amended Agreement for the management of the Company.

49.

The Second Amended Agreement is binding on the parties and limited the total compensation of the Defendant managing member to $3,000 per month, requiring any amount in excess of this amount to be approved by unanimous consent of all members.

50.

Additionally, the Second Amended Agreement required Defendant managing member to distribute annual financial statements to all members and provide online access for banking records, rent rolls and leases of the Company.

51.

Defendant had a duty under the Second Amended Agreement duty to limit his total monthly compensation to $3,000 and provide Plaintiff online access to any and all company banking records, rent rolls, and leases, and annual financial statements.

52.

Defendant breached the Second Amended Agreement by failing to abide by the monthly compensation limit of $3,000. Since the execution, in relation to 805 Marathon, Defendant has illegally paid himself $95,825 in real estate commissions, $71,378 in development fees, personal health care $8,962, unsubstantiated personal expense $5,229, unsubstantiated checks to cash $14,107 – for a total of $195,501.

53.

Defendant breached the Second Amended Agreement by failing to abide by the monthly compensation limit of $3,000. Since the execution, in relation to GCA Building, Defendant has illegally paid himself $19,695 in real estate commissions,

unsubstantiated personal expense $5,995, unsubstantiated checks to cash $28,188 – for a total of $53,878.

54.

Plaintiff, as an 50% interest owner and member of G&B Properties, is entitled half of all profits enjoyed by the Company.

55.

As a direct and proximate result of Defendant's breaches and unlawful conduct only since the Second Amended Agreement, Plaintiff has suffered damages and is entitled to recover half of all company funds misappropriated by Defendant in the amount of at least $249,379.96, pre-judgment interest thereon at the rate of eighteen percent (18%) per annum until all charges are paid in full, and attorneys' fees, costs, and expenses incurred in collecting upon the amount owed.

**COUNT II: FRAUD**

56.

Paragraphs 1 through 55 of Plaintiff's Complaint for Damages are incorporated by reference as if fully set forth herein.

57.

Defendant was not entitled to receive compensation for real estate commissions, development fees, personal health care, personal phone bills, unsubstantiated personal expenses, and unsubstantiated checks to cash – for a total of $594,068.

58.

Defendant knowingly and intentionally misrepresented material facts to Plaintiff claiming in relation to these Fraudulent Transactions. Specifically, Defendant misrepresented and actively concealed the amount of compensation he received from the Company.

59.

Plaintiff reasonably relied upon Defendant's material misrepresentations and has been harmed as a direct and proximate result of Defendants' fraud, including but not limited to half of all funds misappropriated by Defendant in the amount of $594,068.

60.

Plaintiff is entitled to recover at trial all damages caused by Defendant's fraud, as well as punitive damages to be determined by a jury.

**COUNT III: THEFT BY CONVERSION**

61.

Paragraphs 1 through 60 of Plaintiff's Complaint for Damages are incorporated by reference as if fully set forth herein.

62.

Defendant converted the G&B Properties' funds for his own profit and benefit to the exclusion of Plaintiff when he paid himself at least $594,068 in unauthorized compensation.

63.

Plaintiff, as an 50% interest owner of G&B Properties, is entitled half of all profits enjoyed by the Company.

64.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and is entitled to damages in the amount of at least 50% share of $594,068, pre-judgment interest thereon at the rate of eighteen percent (18%) per annum until all charges are paid in full, and attorneys' fees, costs, and expenses incurred in collecting upon the amount owed.

**COUNT IV: BREACH OF FIDUCIARY DUTY**

65.

Paragraphs 1 through 64 of Plaintiff's Complaint for Damages are incorporated by reference as if fully set forth herein.

66.

Defendant is the managing member of G&B Properties.

67.

As managing member of G&B Properties, Defendant owed a fiduciary duty of care and loyalty under Georgia law to Plaintiff as a member of the Company .

68.

Defendant breached his fiduciary duty by paying himself at least $594,068 for the Fraudulent Transactions while failing to provide Plaintiff with online access to any and all company banking records, rent rolls, and leases, as well as to provide Plaintiff with annual financial statements.

69.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to recover at least 50% share of $594,068, pre-judgment interest thereon at the rate of eighteen percent (18%) per annum until all charges are paid in full, and attorneys' fees, costs, and expenses incurred in collecting upon the amount owed.

**COUNT V: ATTORNEY'S FEES**

70.

Paragraphs 1 through 69 of Plaintiff's Complaint for Damages are incorporated by reference as if fully set forth herein.

71.

Plaintiff has repeatedly demanded Defendant cease and desist from his fraudulent activities and Fraudulent Transactions as the managing member of the Company.

72.

Plaintiff's counsel demanded the same in the two separate letters dated January 24, 2019 and September 11, 2019, but to no avail.

73.

Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

74.

As a result of Defendant's actions, Plaintiff is entitled to recover his expenses of litigation, including reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11 and § 13-6-13.

**JURY DEMAND**

Plaintiff demands a trial by jury on all triable issues.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joseph B. Babb prays this Court for the following relief:

A. Compensatory, special, treble, and punitive damages against Defendant

in an amount to be proven at trial;

B. Prejudgment and post-judgment interest;

C. For the cost of this suit;

D. Attorney's fees;

E. A trial by a jury of twelve on all issues so triable; and

F. For such other and proper relief as this Court may deem just and proper.

Respectfully submitted this 13th day of May, 2020.

LEWIS BRISBOIS BISGAARD
& SMITH LLP
Bank of America Plaza
600 Peachtree Street, NE
Suite 4700
Atlanta, GA 30308
404.348.8585 – Telephone
404.467.8845 – Facsimile
Michael.Freed@lewisbrisbois.com
Adi.Allushi@lewisbrisbois.com

*/s/ Adi Allushi*
P. MICHAEL FREED
Georgia Bar No. 061128
ADI ALLUSHI
Georgia Bar No. 852810

*Attorneys for Joseph B. Babb*

**RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

Dated: May 13, 2021.

*/s/ Adi Allushi*
ADI ALLUSHI